This case is we have solutions versus. Mr. Jacques, maybe you can tell us how to accompany. We call it a YAV. What? You win. Please proceed. Good morning. I may please the court. The issue in this case is whether YAV has standing as an exclusive licensee to sue these defendants on these particular patents. YAV has the usual rights of an exclusive licensee on its face, the license that says it's exclusive. It's limited to a field of use, but it does include such things as the right to sue, the right to assign, the right to sub-license. All the things that you usually find in an exclusive license. Now it is subject to prior existing licenses, prior existing non-exclusive licenses. There's quite a few of them here. There are quite a few. Does the sheer number of the Skyworks and the Qualcomm and the other intervening licenses undermine your exclusive rights here? I don't think it's a matter of quantity. I don't think that the fact that there are ten or a hundred prior existing licenses makes a difference. Well, suppose there were only one person who wasn't licensed and the so-called exclusive licensee was saying, I'd like to recover from this one person who wasn't licensed. That would be if standing to do that. Yes, I believe they would because that would be an injury to their area of exclusivity. If they have at least the right to sue and to collect damages from that one person, those are their exclusive rights. And the infringement by that one person couldn't be indulged? That's right. And so they would have the right to do that. And there would be at least a constitutional injury in order to do that as well. So I don't think it's a matter of quantity. And if you look at the cases on site... Does YAV have the right to sue Qualcomm? I don't know. I don't believe so. And there are other prior existing licenses where they don't have that right. But Qualcomm is not sitting at the table, so that's not an issue. The district courts seem to be making a distinction between sort of prior existing licenses, that is, licenses that existed prior to the grant of the exclusive license, and the, shall we say, prior existing right to grant future sub-licenses. And I'm hard-pressed to discern a principal distinction between the two, as long as the accused parties are not either licensed or eligible at any future time to become licensed. Because it seems to me then there is an injury to the right to exclude, as relates to that party, to satisfy Article III. That's precisely our argument. I would agree. The fact that there are these prior existing licenses, we know from cases that that's okay. And so the real issue is this prior existing right to sub-license a small but defined group of affiliates, joint venture partners who make a certain product. The word spin-offs comes in there, too. And now our spin-offs, we can follow our case law and say a subsidiary becomes part of the overarching corporate whole. Is a spin-off the same? A spin-off is not the same, but it is a small, it is a defined entity. And it's where the product, the business, goes to somebody else. But you're not necessarily, in most of the affiliate situations, they're making a product that comes back to the corporate center here. A spin-off is independent, right? It would be, after the spin-off. So what about the hypothetical where one of these, Skyworks, Mindspeed, Qualcomm, they'd start spinning off hundreds of little, would that undermine your rights? Well, first of all, I don't think they can do exactly that. The spin-off rights, I think if you look at the way they are defined, they are with the sale of part of the business. They're not just creating new entities, but where part of the business is sold. And I believe the spin-off rights are defined in terms of a particular product. But your answer is that whatever spin-offs could occur, it doesn't include these defendants. And as long as these defendants can't be licensed, that's the end of the inquiry. Yes. Perhaps I should stop there. That's the essence of our argument. The textile case we don't think is controlling. What if one of the potential future sub-licensees is acquired by one of the defendants by way of a merger, for example, that becomes a part of the accused party and then acquires the sub-license? We would have an interesting situation there because that particular entity may be licensed in part and not licensed in part because that acquisition would probably only extend to the product. For example, in the Connexent Agreement, the only thing that can be spun off are Connexent products. And so if that was acquired by somebody else. And again, going back to what I said earlier, I suppose that the same question would be presented if that party had been a licensee before the exclusive license and then there was a merger, you'd have the same interesting question. And you could have the same question if they were making products within the field of use and outside the field of use. But at least in our area of exclusivity, this field of use and these defendants, we should have the right to sue. How about the extension of the sub-license right to joint development partners? Would that present a problem? That is also in the context of a specific product. So it's a joint development, for example, for a Connexent product. And that also doesn't extend to these defendants. Do you want to save your rebuttal time, Mr. Jakes? Mr. Thomas, you have five minutes. Thank you, Your Honor. We have two brief points that I want to make. And the first one really goes to the broad wording at page 19 of the district court's opinion where Judge Pate stated that no one has standing to assert the patents. Does Minespeed agree that you couldn't sue anybody for infringement with respect to handheld devices? Wireless. Yeah, in the wireless field. You can't sue. Yeah. Those exclusive rights devolved ultimately to YAB. That's correct. But our first bit that we're picking, so to speak, with Judge Pate's ruling is the statement in there which has caused some concern amongst our clients and potentially other people that no one has standing to assert the patents. We possess all of the rights to these patents, all of their fields of use, other than the wireless handset field. And we really would like this clarified, that the ruling on this that Judge Pate has limited only to YAB's rights as an exclusive licensee in the wireless handset field. Nothing in this order that Judge Pate has issued should in any way affect Minespeed's standing to enforce its rights and its fields of use. You did not file a notice of appeal in this case? No, we did not, Your Honor. Then why is this before us? Well, we are a defendant appellee, and we're entitled to comment and even critique the opinion. Why are you an appellee? Why are we an appellee? Because we are a nominal defendant in the lawsuit, and we have a right to file a brief as an appellee, as any appellee would. And I think the issue which was briefed by the defendants is whether or not we can ask to overturn the opinion. What we're asking is for the court to, we're entitled as an appellee to comment and even criticize the opinion and to draw the court's attention to an area that I think clearly exceeds the scope of the jurisdiction of the trial court in making a determination that no one has standing to enforce these patents. But the claims we're looking at here, claims 1 through 14, were asserted against Motorola, not MindSpeed. The judgment didn't really concern you at all, did it? You're worried about a little language in there, but it doesn't impact you at all, does it? No, no. So long as it's limited to YAV's rights and wireless handsets, we totally agree. There is another aspect to it. Shouldn't you have filed a notice of appeal if you want this court to amend a judgment? I don't think so, Your Honor. Indeed, isn't that required? No, no. I don't think it's required at all because we are not standing before you asking you to reverse this opinion. Well, you're asking us to modify it. To modify it, to clarify it, to modify it. And it doesn't affect you. You're skating on pretty thin ice here. Well, we do think, I think, as a consequence of the debriefing. It wouldn't have been that painful to file a notice of appeal. It wouldn't have been painful, but I'm not certain that we were aggrieved enough to be an appellant in this case. We have language here. But you're here taking Mr. Jakes' time. I'm not sure. Well, thank you. Thank you. Mr. Thomas, let's go on to Mr. West. Thank you. May it please the court. What has been missing entirely from this discussion so far is what are the requirements for constitutional standing? It has always been a bright-line rule that only an exclusive licensee has constitutional standing to sue, even when joined with the patent owner. That was the case in independent wireless, and the principle has been established since at least Waterman v. McKenzie. YAV, however, is not. You can be an exclusive licensee within a field of use, can't you? Yes, you can. You so help. That's way back to Waterman v. McKenzie. That's the Supreme Court. You can be an exclusive licensee subject to preexisting licenses. That is true, too. Now, what is the principle difference, then, between a preexisting license and a preexisting right to grant sublicenses in the future to a defined set of parties? That's my point, and I'm getting to it. As this court has said many times, including as recently as yesterday, a licensee is an exclusive licensee only if it has the patentee's promise that all others shall be excluded from practicing the invention within the licensee's territory or field. What Judge Moynihan is asking about, suppose here, instead of allowing these people to sublicense their affiliates, they had simply licensed their affiliates in the first place. And what's the difference between, and that would, they would still be an exclusive licensee if that had happened, so what's the difference between giving them a license in the past to a defined set of people and allowing them to give a license in the future to a defined set of entities? The difference is the absence of the promise. If they had licensed subsidiaries and then said, okay, we really wish the right to license anyone else, that would be the difference. I fail to see the difference. In terms of the constitutional question of standing, the question is injury, the injury, and we're talking about the patentee's right to exclude the defendants in the lawsuit. And if the patent, if the plaintiff, rather, has the right to exclude the defendants, and that right can't be defeated because the license is exclusive, albeit subject to some other licenses or future licenses, then what's the difference? Well, that raises several points, but let me answer the second one first. If the defendant's license doesn't exclude everybody, which I think they concede it doesn't, because other licenses can be granted, but only applies to the defendants here, then what you have is the hunting license problem that the Supreme Court addressed in Crown Die, where they said you can't split off the right like that. And there's another reason why that has to be the rule, because consider this situation. Patentee issues a sole license, but without giving the promise that he won't license anybody else. In that case, the sole licensee, according to many precedents, has no proprietary interest, and he has no constitutional right to sue. If the patentee then adds the promise that, okay, sole licensee, in the future you're going to be exclusive, I'm not going to grant any more licenses, at that point, the sole licensee who had no right, no protectable legal interest, now has a protectable legal interest and constitutional standing. That's the difference. It's the existence of the promise that no more licenses will be granted in the future. That explains, Judge Lynn, the difference that you've been asking us about. And I think I've tried to explain it as best I can, but if I can clarify that any further, I'll try. I'm still having difficulty with that, because what difference does it make if the patentee says, I promise I won't license anybody else except the following ten companies? Well, then he's not given an exclusive promise. If he says... Well, it's no different than if the patentee had licensed those ten parties and then said, okay, I'm now going to give you an exclusive license subject to the existing ten license agreements, and I promise I won't sue anybody else. The patentee obviously already has covenanted not to sue the ten existing licensees. Yes, if there's an existing license, and the patentee then says, okay, I'm giving you an exclusive license because I promise I will not grant any more licenses. That is when the proprietary interest is created. Without that promise, and when I said this, this has been said many times. It was said in Reinhardt v. Kelly, the en banc decision. It was said again in textile development. There's got to be the promise. Without that promise, you're not the exclusive licensee. The promise is that all others shall be excluded in the future. If you only say I'm going to exclude some others or I'm going to exclude most others, that's not a promise that makes you the exclusive licensee. But we know who all the future licensees will be, except maybe for the spinoffs and their rights are extremely limited. Well, we disagree with that. We don't know who they will be because of these third-party developers, because of the spinoffs. But you agree that these defendants can't be licensed, right? Well, we're not even certain of that because we do know that Skyworks has the exclusive right to license Qualcomm. We know that Motorola's wireless handsets include the Qualcomm chips that do the speed coding. So it's entirely possible that Skyworks can license Qualcomm to protect the defendants in this case in that situation. We pointed that out in a brief, and I don't think there's been any effective response to that. So the point, once again, Judge Lynn, is that you have to have the promise that all others will be excluded from practicing in the licensee's territory or field. And here it is undisputed that others have the rights to grant licenses in the future in YAB's field. But if they're only going to be making products for ConExtent and those who are already licensed anyway. Not so. So we've not expanded the rights, really, beyond that, have we? If you look at the terms of the agreements, it includes not only existing products, but future products as well. It's not limited to existing products. None of those are. But it's limited to the products of those named companies. And the subsidiaries, including future subsidiaries. That's true. But that's not coextensive with, it doesn't overlap with, it doesn't relate to any of the named defendants in this lawsuit. The fact that it doesn't relate to the named defendants only means that YAV has a hunting license. And a hunting license is not sufficient. Tell me why you put such emphasis on present versus future products. You see a distinction there that I'm not sure I comprehend easily. This goes to the fundamental nature of the patent grant, which the Supreme Court has always emphasized is unitary. And that's why, under the statute and under the Supreme Court precedents, the ability to sue, the constitutional standing to sue, has always been very limited to those that hold the proprietary interest in the patent. The proprietary interest cannot be divided up in a lot of different ways. So it only has to go to the patentee, according to the statute, assinees of the patentee, and exclusive licensees. Because those are the people that possess the unitary proprietary right. And in this case, YAV doesn't possess that unitary proprietary right because it is not exclusive in its field, because it doesn't have the promise that no further licenses will be granted in that field. So the consequence of this is no one can sue. Beg your pardon? The consequence is no one can sue for the infringement, right? Well, MindSpeed can't sue because they've given an exclusive right to WIAV. And in your view, WIAV can't sue. So no one can sue, right? So the infringement, so that these defendants can go ahead and infringe the patent and nobody can do anything about it, right? No, that's not our position. Okay, who can sue? Well, at the present time, perhaps no one. But what can be done is if these other retained rights to grant licenses are either extinguished or transferred to WIAV, then WIAV has got the full right and has the constitutional standard. But that hasn't happened yet. The problem is that WIAV's predecessors divided things up in a way that Skyworks could not make the promise to WIAV because Skyworks didn't have the ability to make the promise that WIAV would be exclusive in its field. Look at the agreement. Skyworks says, well, there are a lot of encumbrances here. We're telling you what they are. You're taking it subject to all of that. You've done your due diligence. You say, you know, what's at stake here? We're not making any more of these representations. Take the pig and the poke, WIAV. And WIAV knew what it was doing. The district judge so said that they knew what they were doing. They did it deliberately, and they have to suffer the consequences. They knew the rules on standing. What should they have done if they wanted to accomplish what they believe they accomplished here? They should have gone back to those other parties and in some way negotiated a relinquishment of the right to grant future licenses. That way they could have perhaps become exclusive. That's the only way they could get the promise that way. Without the promise, they're not an exclusive licensee. The purpose of this is to make sure we don't have a multitude of different people suing on the same patent and all saying that they are the one entitled to do so. As a matter of fact, we only have one party here who asserts any right at all. So we don't have the problem that this rule is supposed to address, do we? You're addressing prudential standing. That multiplicity of suits is a prudential standing issue. But here the issue is constitutional standing, not prudential standing. And as to constitutional standing, if you don't have the promise that you're exclusive in the future, then you do not acquire the proprietary interest that gives you the constitutional standing because you do not have a legally recognized injury to protect. What if a patentee issues a license to a company and says, I hereby grant to you the exclusive right to make, use, and sell in the United States and the right to sue and recover damages against General Motors? Period. And then the following week, file suit against General Motors. Is there standing? Well, if I heard the hypothetical correctly, that sounds to me exactly like the crown die situation where the Supreme Court said you can't split off the right to sue and give somebody, some third party, the right to sue. No, you're granting an exclusive license with the right to sue General Motors. And in your exclusive license, you're saying, you know, I agree that I am, I shall not grant a license to General Motors. I'm giving you an exclusive license with the right to sue General Motors. Let me just make sure I understand. I misunderstood previously. So you're saying the patentee gives the licensee, says you have an exclusive license and you have the right to sue General Motors? The patentee says, I'm not going to sue General Motors. I give you the exclusive license to sue General Motors and the right and license to make, use, and sell the product. It sounds to me, though, you're saying that the patentee is not retaining any right to sue. Am I correct? The patentee retains the right to sue anybody else in the world except for General Motors? Well, that gets into other issues of retained rights. The licensee doesn't then have all rights. But if the license is truly exclusive, that the licensor is not going to grant any further licenses, then I think the licensee does have the right to sue there with the patent on it, but only with the patent on it. Thank you, Mr. West. Thank you very much. Mr. Jakes, you have a minute and a half. I have nothing further unless the Court has any questions. Thank you, Mr. Jakes. That concludes our morning. Thank you.